Howey, J.,
delivered the opinion of the court:
This cause represents a class of cases growing out of the struggle between the sections during the Civil War, the complexities of which cases are passing into history along with the events of the unfortunate period which gave them birth. Cases involving loyalty and questions incident to the taking *77 of property for the use of armies in the field are rapidly disr appearing from the docket of this court, which has had exclusive jurisdiction of most all, if not entirely all, of such litigation.
Because of some unusual circumstances in the present case and the earnestness with which the issues have been presented and discussed the court takes the occasion to supplement the special verdict set forth by the findings with reasons for its action. These reasons will at least serve to show some of the difficulties of this court incident to trials involving evidence of a nature not absolutely certain, but likewise serve to show some of the legal questions arising out of testimony in arriving at correct results.
As in many cases of the class mentioned, the result will probably be unsatisfactory both to the petitioners as well as to the defendants. We have all seen cases like this,- however, where dissatisfaction may exist and affords for that reason greater assurance to the court that the results attained are just. Especially is this so where amounts are involved.
Petitioner is the surviving partner of Robert Love & Son, and the firm was residing and doing business in Chatham County, N. C. After alleging in the petition that they remained loyal to the Government throughout the war, the petitioner requests a finding under the rules to show that the military authorities took from the firm for the use of the Army 80 bales of cotton, of the value of $20,0.00. But the petition -prays for findings for a value not exceeding one-fourth the amount requested, while the brief discloses an elaborate argument for the larger quantity and amount.
Recurring to the bill transmitted by the resolution of the Senate, we find that the court is without authority to exceed the amount named in the bill and proposed by its terms to be appropriated. The sum fixed by the bill is $5,000 “ for stores and supplies taken by United States troops for the use of the Army in April, 1865.”
In order that there shall be no further hearings as to the amount and.value of the property taken and because we are of opinion that the result is about as near correct as can be *78 attained by testimony at this late day, the court has made its special verdict fixing the value of the cotton taken by the military forces for their use at $5,000.
There is no doubt in the mind of the court that Eobert Love & Son had a considerable quantity of cotton taken as set forth. The firm was in the cotton business, and it is reasonably established that they had in storage a quantity of the staple much in excess of the amount for which the court is able to make allowance. The cotton was delivered and stored in a warehouse near Morrisville. The surviving partner proves that he secured a part of the cotton after the alleged taking. It has been most difficult in considering and weighing the testimony (after two presentations of the case) to determine just what weight should be given to the testimony. All the evidence and circumstances considered, and especially the circumstance that some of the cotton in storage was recovered by the petitioner, and that it is not clearly shown how much of the large quantity stored was actually used by the troops, the-court is of opinion that.the amount set forth in the bill is the probable amount which was used.
The use made of the cotton was a supply. The Fifteenth Army Corps (of fifteen or twenty thousand men) was camped in the immediate vicinity. The bales of cotton were taken from storage and cut open and beds were made out of it for the use of the troops all over the camp. As the troops were not there many days it appears that the cotton was not entirely destroyed, but was picked up in a trashy condition in bunks on the grounds where the soldiers had camped. It appears further that after gathering some of the cotton so left in the deserted camps some of it was stolen from the agents of the owners. This last fact convinces the court of the approximate correctness of the'finding as to the extent of the loss of the firm for which the Government became responsible.
At an early day in the history of these cases for stores and supplies jurisdiction was held to be necessarily restricted to the claim described in the bill. Choteau v. United States, 20 C. Cls. R., 250. If this was so under the Bowman Act of *79 1883, it is likewise true in cases transmitted under the provisions of the Tucker Act of 1887.
We have passed the preliminary matter of loyalty because of the more important matter presented as to the alleged taking of the property charged to have been appropriated and used. But there is a word to say as to the loyalty of the claimants.
The surviving partner, the son of a father who was elected to the convention in opposition to the secession of North Carolina and at the close of the struggle was again elected to the convention for the reconstruction of the State, followed the fortunes of the family by refusing to volunteer, and when actually conscripted escaped from the service by providing a substitute. As to the deceased partner, the only thing adverse to his- loyalty is the fact that in 1864 he, together with other citizens of the vicinity in which he lived, appealed to the military authorities of the hostile government for protection and asked that a company of soldiers be stationed in the county for that purpose. As the Confederate government was the only one which at that time could render protection to the community, it can not be said that Robert Love’s act was in furtherance of the cause of secession or in any manner an aid to the enemies of the Union. In the case- of Baldy v. Hunter, 171 U. S., 388, it was held that the existence of war between the United States and the Confederate States did not relieve those within the lines of the latter from the necessity of civil obedience, nor destroy the bonds of society, nor do away with civil government or the regular administration of the laws; and because transactions in the ordinary course of civil society as organized in any territory, although indirectly promoting the needs of unlawful government, were without significance except when proved to have been entered into with actual intent to impede further invasion or resistance.
A copy of the findings and conclusions, together with a special finding with respect to laches, will be transmitted to the Senate, together with a copy of this opinion.